Your Honor, I'd like to case the morning call, 09-631 Action Plumblin v. Bendowski on behalf of the Advocates, Mr. Timothy J. Patnoe, on behalf of the Advocates, Mr. William B. J. Plumblin Good morning, Counsel. Good morning, Your Honor. Mr. Patnoe. May it please the Court. And forgive me, I have a bit of a sore throat this morning. Maybe just direct the microphone a little bit further up towards your mouth. Thanks. It will pick up your voice better. I represent, as you know from the briefs, parties in this consolidated appeal that are labeled suspect purchasers. These are homeowners who bought their homes from Newman Homes, Inc., a now-bankrupt home developer. Newman Homes was the one who contracted with Action Plumbing, who was the plaintiff in that plea. On June 9, 2009, decrees of foreclosure and mechanics were entered against my clients that included Action's attorney's fees. Your Honors, we ask that Your Honors reverse those decrees to the extent that they include the attorney's fees. The Court has before it a straightforward, plain-language issue of statutory interpretation. The issue of statutory interpretation can be determined on the plain language of 17B, Section 17B of the Illinois Mechanics-Lane Act. That section, as Your Honors knows, says if the court, the trial court, specifically finds that the owner who contracted with the improvements failed to pay any lien claim at the full contract price without just cause or right, the court may tax that owner, the owner who contracted for the improvements, but not any other party. As the Court well knows, when you have an issue of attorney's fees, the American rule is implicated. The American rule is a common law principle expressing a policy opinion long established in the courts of the state that a party should not be taxed with another litigant's attorney's fees unless there is either contractual authority or statutory authority. Action admits, and the trial court found, that there is no contract between Action and my clients. The only contract that we had was with Newman Homes when we purchased the homes. Isn't it simple, Counsel, that the Lane Act is pretty clear in what it states with respect to attorney's fees? That's our view exactly, Your Honors. It's very clear. In fact, when you're dealing with the American rule, you need statutory authority. Not only is the authority here very limited and narrowly drawn to only impose these fees on the owner who contracted the improvement, and we don't, Your Honor. 17c is the mirror image provision, so that will impose, will tax the lien claimant with the fees only of the owner who contracted for the improvement if the lien claimant's claim is without just cause or right. And this Court's opinion in Thomas Haig addressed 17c, which is the mirror image provision, and a little later I would like to touch on Thomas Haig because I think there's more to be drawn out of Thomas Haig than there was in the briefs. But, Your Honor, the provision here, 17b, not only contains this very narrowly crafted statutory authority, but it also contains an explicit prohibition. The legislature wanted to be very clear about who could be taxed with the fees. Action admits in the trial court so found that my clients are not the owner who contracted for the improvements. This provision says that only they can be taxed, the owner who contracted for the improvements, but not any other party. We are clearly other parties. Yet these decrees tax my clients with Action's attorney's fees by putting their properties up for sale to satisfy that debt. So then what has to happen is either they had to pay the attorney's fees or subject their homes to a judicial sale, is that correct? That's exactly correct, Your Honor. In fact, Action argues here for a taxing that is completely unrealistic. It is so tenuous as to be completely academic. Action's argument is that the trial court said it was taxing only human homes, yet no personal judgment was entered against human homes whatsoever. The only order here, judgment that was entered, was this decree, which operates only on the property of the subsequent purchasers. Human homes no longer has any interest in the properties that are to be sold at foreclosure. And so it suffers absolutely no monetary detriment. As we've emphasized in the briefs, it does the exact opposite of what's in it. Did Judge Countryman initially not allow the attorney's fees to be taxed against the current owners and then later on change that ruling? I confess, Your Honor, it's hard for me to understand exactly what Judge Countryman had in mind in this regard. We did present the issue on motion for partial summary judgment. And the order that he entered in response to that motion basically just kind of recited back the language of the statute and said, the subsequent purchasers are not the owners who contract the leave permit and shall not be taxed. And the decrees that are entered say only human homes are being taxed. But in any sort of real-world sense, Your Honor, that's what these decrees do. They tax our clients. Action has attempted to draw distinctions of various kinds between taxing and collection. We've tried to demonstrate through various means, Your Honor, that there's no such distinction. I think on June 1 after the bench trial, he said, I think he specifically said, when I'm taxing attorney's fees, I'm taxing them on human homes. He then ordered that the amount of attorney's fees be included in the foreclosure decrees entered against the subsequent purchasers. And as you said, they had no choice but to pay him in order to avoid foreclosure. Yes, Your Honor. And that's exactly the disconnect that we're focused on with this appeal. But he initially did not tax. He initially was stating, I can't tax the subsequent purchasers. He was acknowledging the language of the statute, yet in the actual operation of this decree, he was doing the exact opposite. Right. Incidentally, Your Honor, the language of 17B fits completely with wider policies of the Mechanics-Lean Act, which is to give third parties, such as these subsequent purchasers, greater protections. We've cited Steinberg in the briefs, but there are numerous other cases in the jurisprudence of this court that recognize that As between the owner who contracted for the improvements and the lien claimant, that's special. The owner is the one who contracted for the work. The owner knows what the status of the contract is. The owner knows that the work's been done properly. The owner knows if he's paid that money. The owner knows if he has a defense to payment that is just. The owner knows all that stuff. The homeowners, when they simply buy these homes under the contracts that they entered into, no, none of that. They're third parties. And the Act actually imposes greater obligations, Section 7 is prominent among them, for the protection of third parties. So when the legislature drafted this provision, clearly they wanted to acknowledge that different relationship. And so they were quite explicit, but not any other party should be taxed. But that's what these decrees do. Did you have the opportunity to read the discussion on the floor with respect to this amendment? I'm familiar with Representative Lou Lange's comments, Your Honor. With Tom Cross. I'm not familiar with that, Your Honor. I guess the reason I'm asking you that is I am confident that your opponent is probably going to address Section 18 of the Mechanics Lien Act, the 1895 Mechanic Lien Act, which allowed attorneys' fees to be taxed against all the parties or any party. I guess my question to you is how would you distinguish that and convince us that that's not the way we should go? Well, let me talk about Sections 18 and 19, Your Honor. Section 18 is simply a provision that talks about the scope of the property that can be sold at full closure. And it ties back to Section 1. Section 1 talks about the attachment of the lien. Under Mechanics Lien Law, the lien attaches at the time the contract was entered into between the owner who contracted for the improvement and the lien claimant, who's the contractor under the statutory scheme. The lien attaches to the property that's then owned by the owner. The statute recognizes that parts of that or maybe even all of the property might be sold to other third parties while the lien is pending, while the foreclosure is pending, at any time prior to final judgment. Section 18 just simply says that if the claimant is successful in enforcing their claim, the scope of the property that can be sold is the same as the scope to which the lien originally attached. It's simply an expression to clarify what can be sold. It has nothing at all to do with attorneys or the amount to be sold. Now, Section 19 talks about the amount to be sold for the amount due. And then it goes on to say that if there's a deficiency after sale, that deficiency can be charged against those who are personally liable for the debt. Action attempts to argue that the phrase, but not only of the party, was intended to deal with that and attempts to use the rubric that the statute should be read as a whole. But we believe that really what's happening there, Your Honor, is that action is attempting to take this phrase, which was put by the legislature in 17b and also 17c, and not into Section 19. Action is attempting to import that phrase into a different section of the act where it doesn't belong. Section 19 says nothing about attorney's fees. Section 19 says nothing about taxing. There is no provision of 19 or 17 that says that the attorney's fee should be included in the lien to be foreclosed. All 19 talks about is the amount due. Amount due is a term that's also used in Section 1. But Section 1 clearly defines amount due to mean only the amount of the labor and materials, equipment, apparatus, and machinery that's supplied by the lien claimant to the site, the amount that's due under this contract, plus interest of 10%. Section 1 says nothing about attorney's fees. Section 1 says nothing about adding those attorney's fees to the lien. In fact, throughout the entire corpus of the act, you will not see any provision that says fees shall be added to the lien, fees are part of the lien, or anything of the sort. Here's why Thomas Hake is so important, Your Honor. Because Thomas Hake had the reverse situation. Thomas Hake had a situation where the lien claimant loses. Now, if the lien claimant loses, clearly there's going to be no decree. There's going to be no sale or foreclosure because the lien claimant has lost. But yet the legislature put that same phrase into 17C. The court may tax the claimant the reasonable fees of the owner who contracted to have the improvement made and defended the action, but not those of any other party. In Thomas Hake, this court found that the party who was seeking to obtain the fees was not the owner who contracted for the improvement. In Thomas Hake, what the trial court did is it taxed those fees against the lien claimant by entering a personal judgment against the lien claimant. Obviously, 18 and 19 can't be implicated in 17C. 17C is the mirror image of 17B. The legislature is making a clear, unambiguous signal to the courts that what's important here is this contractual relation. Statutorily, we're going to say as between the parties to the contract who know the status of the contract, know the performance of the contract, if they act really without just cause or right, which is the same as a Rule 137 standard, then we will impose fees there, but not any other party. And so 19, as we point out to the court, it's possible, Your Honor, in an appropriate case, if Newman Homes is still on the property, that the trial court could tax in a variety of ways. It could tax by entering a personal judgment against Newman Homes. It could tax conceivably in that situation by adding the fees to a decree that's going to be enforced against Newman Homes' interest. But the legislature wanted to be quite clear that it should not affect any other party's interest. And to the extent that it does, the more specific provision of 17B and 17C should control over more general provisions. Well, your opponent also says that 17B shouldn't apply because it was not in effect at the time. Well, without 17B as statutory authority, they have no claim for attorney's fees. I believe that there have been a number of cases cited to the court. There was a predecessor statute that was passed in 1895, different language. It said fees could be taxed against the losing party. The parties have cited to the court a variety of cases that occur at different times, before that act was in effect, after that act was in effect, while the act was in effect, while this act was in effect. And you have to walk through and trace which act is in effect at which time to understand where the court is coming from. The Kalina case, for instance, was cited by action. But Kalina was based on the 1895 case, an act which said you can tax against the losing parties. Well, you know, we would agree that we were a losing party down below. But that act is no longer in place. Everybody recognizes it was repealed in 45. The act that's in place now fits with the greater protections to third parties that is promulgated in Section 7 and other aspects of the act. We think the better cases to look at are, besides Thomas Haig, and before I run out of time, I want to make just one point about the without just cause point on Thomas Haig. But fair play versus development. Now, that's a contract provision, not a statutory provision, but it really shouldn't matter because the parties agreed they'd be liable. Decree is entered against the owner who contracted for the improvement and a mortgagee to the detriment of the mortgagee. And the court says to require the mortgagee to pay these items and by decree to utilize the procedures of the mechanic lien statute to facilitate the collection of the judgment so procured by subjecting the judgment property to an immediate sale was a ronies. It was a ronies because it included those attorney's fees just as this decree does, these decrees do. One last point about Thomas Haig, Your Honor, on the issue of without just cause. Action has attempted to draw a distinction between 137 and Section 17B here. This Court, in addressing Section 17C, the mirror image provision, discussed those very issues. And this is why I think more can be made out of Thomas Haig. It should be brought to Your Honor's attention. The trial court in that case actually entered sanctions under 137 and under Section 17C against the lien claim. This Court, before it got to the question of the party that could be properly charged, addressed the 137 sanctions and found that there was just cause. It was not a bad faith filing. This Court, in addressing the 137 sanctions, reversed the 137 sanctions and then said that by doing so, finding that the complaint was well-rounded under Rule 137, likewise mandates a reversal of the trial court's sanctions award under Section 17C, thereby recognizing exactly what's playing from the face of 17D that we have a 137 standard that's in operation. Thank you, Counsel. You'll have time on the file. Thank you, Your Honor. Mr. Jagan. Thank you, Your Honor. Good morning, Justices. Good morning. For the record, I'm William Jagan, an attorney officing in the Village of Glen Ellyn, and today representing Action Plumbing Company, Inc., in this appeal. Since the mid-1900s, Illinois courts have recognized mechanics lien foreclosure actions as being in-rem actions, which adjudicate claims against improved property and not against those having an interest in the property. As a result, the Illinois Mechanics Lien Act allows contractors to recover attorneys' fees taxed under the Mechanics Lien Act from the contracting owner's interest in the improved property. When the lien has been properly recorded under Section 7, those taxed attorneys' fees are also recoverable from the encumbered interest bought by a subsequent purchaser. The 1995 amendments to the Act, which added Section 17b, c, d, and e, did nothing to change that established law. Well, but, Counsel, the plain words used in the statute don't have the word interest, do they? They just have the word owner. The court may tax the owner. It doesn't say the owner's interest, but not any other party. So how would you respond to that? I'd respond to that simply by pointing out to you that the entire nature of the Mechanics Lien Act, that's why you have to read it as a whole, the only remedy it gives is a charge upon property. How do you reconcile that with 17b and, as I mentioned to your opponent, looking at the discussions preceding the passage of the amendments in the House? There was discussion on the floor, and I think it was Representative Tom Frost stated, quote-unquote, they provide that when attorneys' fees are awarded for the failure to pay a lien, they can only be issued, they can only be ordered to be paid against the owner of the property, not any subsequent purchasers of the property. So how much clearer can you get that they want to kind of walk away from the lien act in that respect? Let me explain. It's very clear under the case law, and particularly the case of Kendall v. Feder, which is found in 99 Illinois 104. What's the date on that case? That is a 1901 case. It was affirmed by the Illinois Supreme Court in 199 Illinois 294. Does the legislature have the right to change the statute? They do, but I ask you to look at the reasoning in the Kendall v. Feder case and allow me to point out how the legislature recognized that holding. The reviewing court in Kendall v. Feder held clearly that the addition of attorney's fees to the cost section of the 1895 act operated prospectively only because they found that the attorney's fees taxed as costs under the mechanics lien act are secured by the mechanics lien and thus become a charge upon the contracting owner's property. Those courts, appellate and supreme, reasoned that such lien for the claimant's attorney's fee would not simply extend the remedy of the contractor, but would charge the property for his benefit with an additional encumbrance, thereby impairing the contract between the owner and contractor entered before the attorney's fee was added to the cost provision of the act. The Illinois Supreme Court affirmed that reasoning in 199 Illinois 308. But the lien act at that time did not provide for attorney's fees, correct? They were considering whether the addition of attorney's fees to the 1895 act could be applied retroactively as any change of remedy can be, or whether since this is a mechanics lien act, where those costs allowed to be taxed under the lien act are a charge upon the property, they held clearly they are a charge upon the property. Thus, we cannot retroactively apply this because it would be a violation of the constitutional provision on impairment of existing contracts. Now, the legislature in 17E provides that 17B can only be prospectively applied unlike other types of remedies, which are not part of the contract and can be applied retroactively. They expressly limited to the words on or after in 17E, thereby being a clear expression in this statute of the legislature's recognition that the attorney's fees taxed under 17B would be a charge and a lien on the property, and they could not retroactively apply them without violating the Supreme Court case of Kendall v. Feder. Well, then why didn't they put the language in there if that's what they did? They did. They put the language in there. No, they didn't. 17E says that this amendment shall be effective only for liens perfected on or after the effective date of the act, thereby preventing retroactive application. The third district is a buyer development case. So, well, they didn't discuss Kendall v. Feder, but the reason 17E limits it to prospective application is because Kendall v. Feder says it's a lien on the property. By making it a lien on the property, they would impair contracts by allowing retroactive application. Now, what the appellate is asking you to do, very simply, is to take the five words, but not in the other party, and use them to amend section 19. Section 19 has always been construed to mean that the trial court is to determine all amounts owed to the lien creditor under the act. That's its language. And then to pay that amount from the sale proceeds. That's the nature of the mechanics lien remedy. From time immemorial, all amounts of 19 have included costs. And there is no, the appellants concede that the court costs under section 17A are a charge upon the property. That has been consistently the law. And in Kalina v. Steinmeier and Kendall v. Feder, they included attorney's fees taxable under the lien act as a charge on the property. They are saying, take the five words, but not in the other party, and amend section 19 to exclude the attorney's fees. That's not the way the whole mechanics lien act works. Well, section 1 doesn't mandate that a lien include any amount of money for reasonable attorney's fees, does it? You're absolutely correct. Section 1 covers two of the three components. There's three components to the amount owed. The amount of the contract, interest, which is now allowed at 10 percent, and cost. And every case, they have not cited you a single case that excluded costs. So the judicial loss of the mechanics lien act is that there are three components to the amount owed to the lien creditor that are a charge on the property. The contract balance, interest, and cost. They have cited no other case. What is very important about fair play? They mentioned fair play. Fair play made this distinction. They said very clearly in that case that with reference to the item found by the decree to be due a solicitor's fee for the complaint, the record discloses that this fee amounting to $100 was not claimed to be due under the statute, but rather under contract. Had it been due under the statute, it would have been a charge on the property. Now, the distinction here, the fair play made, is that since it's contract damages, attorney's fees are not lienable services. That it's only attorney's fees only become lienable when they are included as costs taxable under the mechanics lien act. So you take the four cases. Kaleina v. Steinmeier, which clearly applied the 1895 act and held that attorney's fees were a charge on the property. Kendall v. Fader, that says they're a charge on the property and therefore they cannot be retroactively applied. Fair play, which says that when they're contract damages, we can't make them a charge. But alluding that if they were allowed under the statute, they would be a charge. And mirror development, which recognizes that the current 1995 amendment must be prospectively applied because there is a charge on the property. Those four cases clearly teach that where the mechanics lien act allows the taxing of attorney's fees, those attorney's fees are a charge upon the property. But doesn't fair play, fair play didn't, they talked about attorney's fees under the lien act versus contractual. Who contracted with Action Plumbing? Who contracted with Action Plumbing? Very good point. The mechanics lien act is part of every contract for improvement of real property. So who contracted with Action Plumbing? Newman Homes contracted with Action Plumbing. Correct. And Action Plumbing's lien is to secure all amounts owed by Newman Homes to Action Plumbing. The amounts owed by the owner who contracts to the contractor is what is secured. A lien exists until it's paid in full. And to pay Action in full, you have to pay attorney's fees taxed under the code. The phrase, but not in the other parties, in the context of the mechanics lien act, simply says it's only the owner's interest of the owner who contracted that is to be charged those attorney's fees. I gave you an example of a tenant and a landlord. If the tenant contracts without the landlord's permission, the lien is only against the possessory interest, not against the landlord's remainder interest. The phrase, but not in the other party, means it's only the tenant who contracted for the improvement and his interest that can be charged, not the remainder man's interest. So if you read these five words in the context of the mechanics lien act and understand that all this act does is impose a lien on a property and it doesn't permit a personal judgment, they haven't answered that question that since the case law has been clear since the mid-1800s that an NREM action cannot result in a personal judgment. How do you collect the attorney's fees? The only way you do it is by a charge on the property because that's the only thing at issue in an NREM action. But isn't that what the legislature was trying to address? No, the legislature was simply trying to do two things. Limit it to the interest of the owner who contracted because there could be several interests in a parcel of property and it's only the interest of the owner who contracted that is charged with the lien. The other thing they were doing is to protect other parties from a deficiency judgment. The 1895 act reads identically in paragraph A. 17A and 1895 act start off the same way. Costs can be taxed against the losing party, but when taxed against more than one party, they're taxed equitably among the parties. And the exercise of that equity is what those five words address. And that equity, when it relates to the difference between subsequent purchasers and the owner who contracted, means that the owner who contracted is the only interest that can be charged with the fees and the only person who can be liable for a deficiency judgment relative to those fees. The other people are not obligated to a deficiency judgment. One last point I'd like to make. Let me ask a question before you make your point. 17B was passed in 1995. Is that correct? 17B, C, D, and E as a package. Just focusing on B. It was passed in 1995. What effect does it have on your case? That it was passed in 1995? 1995. It was passed in 19… 17A, B, C passed in 1995. Our contracts were well after that date. And therefore, the mechanics lien act incorporated into the contracts between Action and Newman. No, I'm saying 1895. It was a 1995 act. It was adopted 100 years later? The Mechanics Lien Act in 1995 was the same Mechanics Lien Act in 1895. We've had a Mechanics Lien Act since 1834. Isn't the language in 17B, which was passed in 1995, different from the mechanic lien language applied to attorney fees prior to 1995? Not significantly. Because those five words do not exchange 100 years of law that all costs taxed under the act are secured by the lien. I mean, the concept that 100 years of law somehow is an item that can't be changed, the legislature changes it many times. So, the fact that it's existed for 100 years doesn't weigh heavily with me relative to the right of the legislature to change it. The legislature had some purpose in enacting the 1995 statute regarding attorney fees. And one of the potential purposes was to make only the owner liable for attorney fees. And you do that under the Mechanics Lien Act by charging that owner's interest with the attorney's fees. Because that's all the Mechanics Lien Act gives you is a charge upon the property. The subsequent purchasers acquired no interest in their homes that was not subject to the Mechanics Lien Act. But isn't it unfair that in order to realize the payment of that obligation that they have to subject their homes to sale, under your theory? No, because every one of them is insured against this Mechanics Lien. And so then what happens? That doesn't prevent the sale. Well, then where does the money come from? Pre-sale or post-sale? As to whether or not they can use the attorney's fees issue to bludgeon contractors into accepting less than what is due. Before you sit down, I just have one question for you. Let's talk about attorney's fees on appeal. Okay. And whether or not it's proper for us to hear that issue, the trial court to hear that issue. Is it proper for you to come before us and ask for attorney's fees on appeal? The judgments entered on June 9 were interim judgments. This case isn't over. It's usual to petition for additional fees and additional costs before the end of the case, before the order confirming the sale and distribution of proceeds. And that portion of my brief was simply to point out to this court that the language reasonable attorney's fees is broad enough to cover appellate fees. And that when you dispose of this case, it should be remanded to allow a petition to be made at that time for additional fees. Any other questions? No. Thank you, counsel. Mr. Kavanaugh. Thank you, Your Honor. How do you respond to the fact that there is title insurance to cover this? It's irrelevant, Your Honor. Why? It's irrelevant under the law of this state. We don't find the parties are liable or not, depending on whether they're insured. We don't say whether a car driver who has a car crash should be held liable because they have insurance. That's irrelevant. It's actually an improper argument for counsel to make before this court. You can't make a rule of law here based upon whether there's insurance or not. We're addressing a situation here that's going to have wide application to all parties that are in this similar situation, Your Honor, whether they're insured or not. I'd like to address directly the contention that action makes here, that the only remedy that the Act gives is this charge on property, this interim decree. And so, therefore, these fees have to be included, because that's nonsense. The Act does not handcuff this court or the trial court in that fashion. And I'd like to make several points in this regard. First of all, 17C is the mirroring provision. In this court, Thomas Haight's case, that's a situation where the lien claimant loses. So under action's argument, it renders an absurdity, because that would mean that we'd have to find some action, some property of action plumbing to foreclose that with a mechanical injury. It makes no sense. The court there had a personal judgment against the lien claimant for the attorney's fees. We also cite it to the court Gallowich, which is a case first cited by action that says, it's a Supreme Court case that says a party can be taxed costs, fees, by the entry of a personal judgment. Action itself cites the Brown and Kirk case. It cites it in a different part of the brief, so it perhaps does not recognize the import of the case. But that case says that when a claim for fees is allowed by statute, it can be brought by a separate claim after judgment on the case. And that's exactly the point here. 17B and 17C are independent grants of statutory authority to award fees. They do not need to be put into the decree. They can be awarded directly against the owner who contracted for the improvements. How do you distinguish fair play or how do you interpret fair play versus the way counsel does? Well, fair play we believe is directly applicable because to this case. So that's your opponent, but I think for different reasons. We have a different reading of fair play. Now, the court there dealt with contract provision, fees, fee provision in the contract rather than the statute. To us, that's a distinction without a difference because the court found that it was unfair to impose those fees on a third party who was not contractually or statutorily liable for those fees. The decree in that case acted in the same way that this case, that this decree acts. It impaired the interests of a third party. You'll note that this statute focuses on that relationship, that dyadic relationship between the owner who contracted for the improvement and the lien claim. Should have direct application in this case, Your Honor, to reverse these decrees because, as we pointed out, that court found that it was improper and erroneous to impose those fees in that fashion on the third party. Do you have any comment on Mr. Jagen's prospective argument, prospective? Well, I'm not sure I understand Mr. Jagen's prospective argument. Your Honor, 17b, which was passed in 1995, is the statutory authority, the only statutory authority that they can point to. This thing about 100 years of law, Your Honor, the statute was different. The statute under 1895 said that you can award fees against the losing party. 17a, which deals strictly with costs, and the courts, this court and the Supreme Court have dealt several times with what's incorporated by that term cost, and it does not include fees. 17a, as the 1895 Act did, says you can impose costs against the losing party. But the 1895 Act was a change, very definite change. In fact, the old Act had been written out of the law in the 1940s. So prior to the 1995 Act, there was no authority for awarding attorney's fees here. I think I've made the points that I intended to make on the document, Your Honor. If there's any other questions, I'd be happy to address them. Anything else? I have not, Your Honor. Okay. Thank you very much, counsel. At this time, the court will take the matter under advisement and render a decision in due course. Court stands adjourned for the day. Thank you.